UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CHARLENE L. SANBORN, | : Case No. 3:20-CV-26 |
| Plaintiff, | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| Vs. | : |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# DECISION AND ENTRY

## I. INTRODUCTION

Plaintiff Charlene L. Sanborn brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits, and Supplemental Security Income, and for a period of disability benefits. Plaintiff filed an application for benefits in April 2016. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative,

for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the Commissioner's Memorandum in Opposition (Doc. No. 11), and the administrative record (Doc. No. 8).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2012. At that time, Plaintiff was forty-eight years old. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). [1] She has a limited education.

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 8-2, PageID 129-38), Plaintiff's Statement of Errors (Doc. No. 9), and the Commissioner's Memorandum in Opposition (Doc. No. 11). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as the Social Security Act defines it—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. THE ALJ'S DECISION

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since January 1, 2012, her alleged onset date.

Step 2: She has the severe impairments of diabetes mellitus, arthritis, sciatica with radiculopathy, hypertension, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, and chronic pain syndrome.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

> Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following additional limitations: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; the claimant can stand and/or walk for about 6 hours and sit for about 6 hours in an 8-hour workday; the claimant would be permitted to alternate between sitting and standing every 30 minutes while at the workstation; the claimant can occasionally push and/or pull with the left upper extremity; the claimant can frequently handle, finger, and feel with the right upper extremity; the claimant can never climb ladders, ropes, and scaffolds; the claimant can occasionally climb ramps and stairs, and crawl; the claimant can frequently balance, stoop, kneel, and crouch; the claimant can occasionally lift overhead with the left upper extremity."
>
> Step 4: Plaintiff is capable of performing her past relevant work as a housekeeping cleaner.

(Doc. No. 8-2 at PageID 131-38). Based on these findings, the ALJ ultimately concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 138.

## V.     DISCUSSION

Plaintiff asserts one error—that the ALJ erroneously formulated her residual functional capacity as it relates to her bilateral carpal tunnel syndrome. She maintains that she should have been limited to occasional, rather than frequent, handling, fingering, and feeling with the right upper extremity, and that such a finding would have precluded her from her past work. (Doc. No. 9, PageID 1557).

Plaintiff relies on her statements at the administrative hearing and related medical records. She specifically argues that the ALJ "failed to consider and explain his reasons for discounting [Plaintiff's] bilateral carpal tunnel syndrome when making his RFC

determination." (Doc. No. 9, PageID 1558). In support of this argument, Plaintiff cites to the Third Circuit for the proposition that an ALJ is "required to consider all evidence before him or her in making a residual functional capacity determination." *Id.* (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)).

A careful review of the record and the non-disability decision reflects that the ALJ did properly consider Plaintiff's bilateral carpal tunnel syndrome. In fact, the ALJ explicitly acknowledges Plaintiff's diagnosis of bilateral carpal tunnel syndrome at Step Four and then goes on to discuss the related medical evidence. (Doc. No. 8-2, PageID 136). He recognized that EMG and nerve conduction testing confirmed that Plaintiff had moderate right carpal tunnel syndrome and mild left carpal tunnel syndrome. *Id.* He also noted that some treatment notes indicated she had abnormalities in distribution of the median nerve and diminished strength, but that she retained full range of motion and normal neutral alignment. *Id.* This evidence was certainly relevant to consider as Plaintiff cites to some of this same evidence in her Statement of Errors.

Plaintiff specifically points to her presentation to Dr. Husain Jawadi for "follow-up" as support for a more restrictive limitation for her right upper extremity and cites to notes regarding "symptoms of tingling and numbness in [Plaintiff's] hands." (Doc. No. 9, PageID 1558). Yet, this is not entirely characteristic of Dr. Jawadi's treatment notes which actually state: "Symptoms of tingling and numbness are admitted in feet and hands." (Doc. No. 8-10, PageID 1502). Additionally, Plaintiff was reporting to Dr. Jawadi for follow-up

6

for diabetes mellitus, rather than bilateral carpal tunnel syndrome. *Id.* The fact that tingling and numbness were not limited to Plaintiff's hands brings into question the cause of those symptoms, and Dr. Jawadi made no direct correlation between these symptoms and the severe impairment of bilateral carpal tunnel syndrome. Therefore, the exclusion of this evidence from the assessment related to this severe impairment was not unreasonable.

In weighing the medical opinion evidence, the ALJ discussed the findings of state agency reviewing physicians, Drs. William Bolz and Leigh Thomas. Both physicians opined that Plaintiff would not have any limitations in handling or fingering. *Id.* at 137. However, contrary to their opinions, the ALJ indicated that "[t]here is evidence that [Plaintiff] experiences some loss of motor function in her hands," and points to the EMG and nerve conduction testing. He declined to follow the opinions of these physicians and instead issued a more favorable residual functional capacity assessment as to this impairment by limiting Plaintiff to frequent handling, fingering, and feeling with the upper right extremity. *Id.* This seems to be the opposite of discrediting Plaintiff's bilateral carpal tunnel syndrome, as Plaintiff suggests, and instead supports the notion that the ALJ reasonably considered her severe impairment in light of the evidence of record.

Additionally, while some portions of Plaintiff's testimony were not explicitly acknowledged in the decision, the ALJ nevertheless considered substantial portions of her testimony that relates to her bilateral carpal tunnel syndrome. As an example, he noted Plaintiff's testimony as to completing household chores such as mopping and vacuuming

with some breaks, which would likely require the use of her upper right extremity. *Id.* at 132. He also accounted for her decreased motor activity on her right and reasoned that this justified a limitation to frequent handling and fingering with the right upper extremity. *Id.* Yet, Plaintiff seems to suggest that this evidence is not enough to account for her testimony.

Plaintiff testified that she was experiencing numbness in her right hand at the time of the hearing, and that such numbness was on-going. (Doc. No. 8-2, PageID 163, 169). She also testified that lifting a gallon of milk is hard on her and causes her to get "real shaky." *Id.* at 169. Holding a glass also sometimes causes her to shake. *Id.* at 172. However, as to the shakiness, she said at the hearing, "I don't know if it's my wrists." *Id.* at 169. Plaintiff also testified to using buttons although they are more difficult with numbness. *Id.* at 169, 173. She also reported that she does the dishes but sits down for breaks. *Id.* at 166. Although some of this evidence was not explicitly mentioned in the ALJ's decision, this does not constitute error as the non-disability decision reflects that the ALJ issued a finding supported by substantial evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand").

To the extent that Plaintiff argues her credibility was erroneously evaluated, such an argument is too without merit. Plaintiff seems to contend that the ALJ erred simply by

not crediting her testimony in full. But that is not error when, consistent with the applicable law, the ALJ relies on countervailing factors and makes a credibility determination which is reasonably supported by the record. It is important to keep in mind that "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). The undersigned finds no error in the way that the ALJ evaluated Plaintiff's testimony, and no basis for remanding the case for additional findings on that issue.

Substantial evidence supports the residual functional capacity assessment as to Plaintiff's bilateral carpal tunnel syndrome and her right upper extremity. Accordingly, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1. The Commissioner's non-disability determination is **AFFIRMED**; and
2. The case be terminated on the docket of this Court.

April 22, 2021                                                *s/Sharon L. Ovington*
                                                              Sharon L. Ovington
                                                              United States Magistrate Judge